UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re ) | Case No. 6:-07-bk-880-KSJ |
| JAMES ALLEN HINTON, ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| DREW DILLWORTH, not individually but as Chapter 7 trustee of the Debtor, James Allen Hinton, and KING ACQUISITIONS, LLC, a Florida limited liability company, ) | Adversary No. 6:07-ap-00039-KSJ |
| Plaintiffs, ) | |
| vs. ) | |
| JAMES ALLEN HINTON, an individual, and SUSAN C. HINTON, an individual, ) | |
| Defendants. ) | |

MEMORANDUM OPINION
PARTIALLY GRANTING AND PARTIALLY DENYING
DEFENDANTS' PARTIAL MOTION FOR SUMMARY JUDGMENT

The defendants, James and Susan Hinton, seek a summary judgment (Doc. No. 35) (the "Motion") that their interests in their home and large federal tax refunds, owned by them as tenants by the entireties, are not subject to curtailment as fraudulent transfers under Section 522(o) of the Bankruptcy Code[1] or to administration pursuant to Section 56.29 of the Florida Statutes. The plaintiffs, the Chapter 7 trustee, and a creditor, King Acquisitions, LLC, dispute the defendants' position (Doc. No. 51). The facts are relatively straightforward.

James Hinton filed this Chapter 7 case on March 9, 2007 (the "Petition Date"). Susan, his wife of almost 35 years, did not join in the bankruptcy petition. With the exception of a very small joint federal tax obligation, the parties have no jointly held unsecured debts.

---

[1] Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

Rather, James filed this case to address debts arising from his prior business of owning, operating, and controlling multiple Burger King and other food-related franchises throughout Texas and South Carolina. By 2001, the debtor's businesses largely had failed, and numerous major creditors were suing him.[2] On September 4, 2003, King Acquisitions, Inc. ("KAL"), as assignee and one of the plaintiffs in this adversary proceeding, obtained a judgment against the debtor in an amount exceeding $2.4 million. KAL since has tried to collect upon the judgment. Now, with the filing of this bankruptcy case, the Chapter 7 trustee is joining in the collection efforts.[3]

After living and working for many years in South Carolina, the Hintons moved to Florida on October 31, 2001. The Hintons purchased an 8,500 square foot home for $1.6 million in cash.[4] The house was titled to "James A. Hinton and Susan C. Hinton, Husband and Wife" (the "Florida Home") (Doc. No. 35, Exhibit A).

During the Hinton's 35 year marriage, they always filed joint tax returns. For the tax years 1997, 1998, and 2001, the couple received three separate refund checks totaling $483,292 (the "Tax Refunds"). Each check was made payable to "James A & Susan Clark Hinton." (Doc. No. 35, Exhibits F and I).[5] The Hintons deposited the Tax Refunds into their financial account

---

[2] For example, on October 16, 2001, AFD Fund commenced an arbitration proceeding against the debtor. On June 1, 2001, and on August 15, 2001, Burger King filed two cases in the United States District Court for the Southern District of Florida naming the debtor as one of the defendants. On August 24, 2001, Citibank filed a case naming the debtor as a defendant, also in the United States District Court for the Southern District of Florida. On August 24, 2001, Baskin-Robbins USA filed a case in the United States District Court for the District of South Carolina naming the debtor as a defendant.

[3] KAL filed this adversary proceeding against the defendants on April 4, 2007. KAL filed an Amended Complaint on May 3, 2007 (Doc. No. 6). Thereafter, the Chapter 7 trustee filed a motion to intervene as party plaintiff (Doc. No. 7), which the Court granted on May 22, 2007 (Doc. No. 26). Recently, on September 7, 2007, the plaintiffs filed a Third Amended Complaint (Doc. No. 99). The defendants filed an Answer (Doc. No. 101) on September 17, 2007.

[4] In his bankruptcy schedules, the debtor valued the home at $1,622,111 and claimed the homestead as exempt pursuant to Bankruptcy Code Section 522(b)(3)(B), Florida's tenancy by the entireties exemption, Florida Constitution Article X, Section 4(a)(1), and Florida Statute Sections 222.01, 222.02, and 222.05.

[5] On November 7, 2003, the IRS issued one check, in the amount of $304,383, for the refund due for the tax years 1997 and 1998. The IRS issued two checks for the refund due for the 2001 tax year, one in the amount of $116,518, and the other in the amount of $62,391, issuing one check on November 7, 2003, and the other on May 28, 2004.

with the Bank of America with the exception that the Hintons used $116,518 to buy a certificate of deposit at Countrywide Bank. The Bank of America account is titled in the names of James and Susan Hinton and is specifically designated as a tenancy by the entireties account. Similarly, the Countrywide CD was jointly titled as "POD," assumedly "payable on death." The Countrywide CD and the Bank of America account will be referenced simply as the "Accounts." The debtor claimed all funds in the Accounts on the Petition Date as exempt property, contending he owned the funds with his wife as tenants by the entireties.

In this and related adversary proceedings,[6] the plaintiffs argue that the Hintons' purchase of the Florida Home was effected by at least one, and perhaps several, fraudulent transfers, and that, therefore, the debtor's claim of exemption as tenants by the entirety is invalid pursuant to Bankruptcy Code Section 522(o). Hinton allegedly simply funneled the liquidation proceeds from his non-exempt, individually held, business interests into the Florida Home he purchased with Susan in order to obtain tenancy by the entireties protection of the proceeds. The plaintiffs argue that Chapter 726 of the Florida Statutes, Bankruptcy Code Section 522(o) and, alternatively, Florida Statute Section 56.29, entitle them to avoid the debtor's transfer of his non-exempt assets into the Florida Home and to administer the debtor's interest in the Tax Refunds.

In the defendants' Motion for Partial Summary Judgment (Doc. No. 35), the defendants raise three issues. First, they assert that the Tax Refunds are properly exempt as property owned

---

[6] On August 10, 2007, the Court entered orders consolidating six adversary proceedings into this lead case, 07-39, for the purposes of discovery and trial: Adv. Pro. No. 7-55 (Asserting objections to discharge pursuant to Bankruptcy Code Section 727(a)(3), (a)(5), and (a)(4)(A)); Adv. Pro. No. 07-56 (Asserting exceptions to discharge pursuant to Bankruptcy Code Section 523(a)(2)(A) and (a)(4)), Adv. Pro. No. 07-57 (Asserting claims under Bankruptcy Code Sections 544, 547, and 548, Chapter 726 of Florida Statutes, and Florida Statute Section 56.29, and Florida Statute Section 222.30 (pertaining to fraudulent asset conversions); Adv. Pro. No. 07-59 (Asserting action to avoid fraudulent transfers/asset conversions between spouses pursuant to Bankruptcy Code Sections 541, 544, 548, and Chapter 726 of the Florida Statutes, Florida Statute Section 56.29, Florida Statute Section 222.30, and seeking a declaratory judgment, a resulting trust, equitable lien and/or constructive trust, and an accounting); Adv. Pro. No. 07-60 (Asserting action to avoid fraudulent transfers/asset conversions between spouses pursuant to Bankruptcy Code Sections 541, 544, 548, and Chapter 726 of the Florida Statutes, Florida Statute Section 56.29, and Florida Statute Section 222.30, and seeking a declaratory judgment, a resulting trust, equitable lien and/or constructive trust, and an accounting); and, Adv. Pro. No. 07-62 (Asserting claims in civil action removed from a case pending in the United States District Court, Southern District of Florida, Miami Division, Case No. 1:01-cv-03631-JEM).

by them as tenants by the entireties.  Second, they assert that Section 522(o) of the Bankruptcy Code does not limit the debtor's ability to claim the tenancy by the entireties exemption in the Florida Home.  Third, they assert that the plaintiffs' claims to avoid the purchase of the Florida Home as a fraudulent transfer are barred by the four-year statute of limitation contained in Chapter 726.  For the reasons explained below, the Court will partially grant the defendants' motion finding that the Tax Refunds are properly claimed as exempt property and that Section 522(o) of the Bankruptcy Code does not limit the defendants' right to claim as exempt the Florida Home, but will partially deny the motion as to whether the applicable statute of limitation under Section 726 of the Florida Statutes has expired.

Summary Judgment Standard.  Pursuant to Federal Rule of Civil Procedure 56, which is applicable under the Federal Rule of Bankruptcy Procedure 7056, a court may grant summary judgment where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56.   The moving party has the burden of establishing the right to summary judgment. Fitzpatrick v. Schlitz (In re Schlitz), 97 B.R. 671, 672 (Bankr. N.D. Ga. 1986). In determining entitlement to summary judgment, a court must view all evidence and make all reasonable inferences in favor of the party opposing the motion. Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).   Therefore, a material factual dispute precludes summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  When opposing a motion for summary judgment, a party may not simply rest on the pleadings but must demonstrate the existence of elements essential to the non-moving party's case and for which the non-moving party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (cert. denied, 484 U.S. 1066 (1988)).

Legal Standard for Florida's Tenancy by the Entireties Exemption.  All of the issues raised by the defendants' motion revolve around the powerful and somewhat unique ownership

allowed between husbands and wives in Florida—tenancy by the entireties. Section 522(b)(3)(B) of the Bankruptcy Code allows a debtor to exclude from property of his bankruptcy estate "any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety ... to the extent that such interest is exempt from process under applicable nonbankruptcy law." 11 U.S.C. § 522(b)(2)(B). Here, the relevant applicable nonbankruptcy law is Florida law, pursuant to which the Court must evaluate the debtor's claim of exemption. In re Sinnreich, 391 F.3d 1295, 1297 (11th Cir. 2004) ("The nature of a bankrupt's interest in property is determined by state law.") (citing Butner v. United States, 440 U.S. 48, 55 (1979)).

In Florida, real and personal property acquired by a married couple is afforded a presumption of tenancy by the entireties ownership. Beal Bank, SSB v. Almand and Associates, 780 So.2d 45, 52 (Fla. 2001) (recognizing history of tenancy by the entireties presumption in real property, and concluding that the presumption also applies to financial accounts); In re Daniels, 309 B.R. 54 (extending presumption to all personal property); In re Kossow, 325 B.R. 478, 485 (Bankr. S.D.Fla. 2005) (finding that the policy justifications offered in Beal Bank should be applied to all personalty, including federal tax refunds); contra In re McAnany, 294 B.R. 406, 408, Bankr. N.D.Fla.2003 (declining to extend the presumption to all personal property other than joint bank accounts). With respect to real property, when such "is acquired specifically in the name of a husband and wife, it is considered to be a 'rule of construction that a tenancy by the entireties is created, although fraud may be proven.'" Beal Bank, 780 So.2d at 54 (citing Hector Supply Co., 254 So.2d at 780)). Ownership of real property "in the name of both spouses vests title in them as tenants by the entireties." Beal Bank, 780 So.2d at 54 (citing Losey v. Losey, 221 So.2d 417, 418 (Fla.1969)). "Thus, [a] conveyance to spouses as husband and wife creates an estate by the entirety in the absence of express language showing a contrary intent." Beal Bank, 780 So.2d at 54 (citation and internal quotations omitted). Similarly, in the "absence

of any controlling statute, express agreement, account statement, or other governing indicia that explicitly establishes a form of ownership other than tenancy by the entireties," Beal Bank's presumption also is applicable to all personal property. Daniels, 309 B.R. at 59.

In Florida, "[p]roperty held as a tenancy by the entireties possesses six characteristics: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names)." Beal Bank, 780 So.2d at 52 (citations and footnotes omitted). All six unities must be present at the time a couple acquires property— "the owners' interests in the property must be identical, the interests must have originated in the identical conveyance, and the interests must have commenced simultaneously." Id. at 53.

The presumption that a married couple holds property as tenants by the entireties, however, is rebuttable. Id. at 58-59. An opposing party can demonstrate that the presumption does not apply by, for example, showing, by a preponderance of the evidence, that one or more of the required unities was not present when a married couple acquired property.

Property held by a married couple as tenants by the entireties belongs to neither spouse individually; rather each spouse is somewhat artificially seized of the entire property. Sinnreich, 391 F.3d at 1297; Beal Bank, 780 So.2d at 53; In re Pereau, Slip Copy, 2007 WL 907545, *1-2 (Bankr. M.D. Fla. March 13, 2007) (Entireties property "belongs to neither spouse individually, but to a separate entity created by their marriage.") (citing In re Bundy, 235 B.R. 110, 112 (Bankr. M.D. Fla. 1999)). "[W]hen property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and, therefore, it cannot be reached to satisfy the obligation of only one spouse." 391 F.3d at 1297 (quoting 780 So.2d at 53).

Therefore, in cases such as this where only one spouse incurs debts or where spouses incur debts separately, ownership of property as tenants by the entirety prevents creditors from reaching the debtor's assets. Here, with the possible exception of a very small debt due to the IRS, the couple has no joint creditors or debts that would allow the Chapter 7 trustee to administer property owned by the debtor and his non-filing wife as tenants by the entireties.

<u>Tax Refunds</u>.  Relying on the breadth of Florida's somewhat unique tenancy by the entireties law, the defendants first assert that their Tax Refunds are properly exempt from administration by the Chapter 7 trustee pursuant to Section 522(b)(3)(B) of the Bankruptcy Code.  Throughout their long marriage, the Hintons have, without exception, filed joint tax returns.[7] When the defendants received tax refund checks, each check was jointly payable to "James A & Susan Clark Hinton." Upon receipt or shortly thereafter, the debtor deposited the refund checks into the Accounts.  Because the Bank of America account expressly was opened as a tenants by the entireties account and because the Countrywide CD also was jointly titled, both Accounts are presumed to be owned by the debtor and his wife as tenants by the entireties. <u>In re Robedee</u>, 367 B.R. 901, 907 (Bankr.S.D.Fla.2007) (a properly claimed exemption under Section 522(b)(3)(B) applies both to real property and to personal property); <u>Daniels</u>, 309 B.R. at 59 (extending <u>Beal Bank's</u> presumption to all marital personal property); <u>In re Kossow</u>, 325 B.R. 478, 488 (Bankr.S.D.Fla.2005) (concluding that a joint income tax refund titled in the names of both spouses constitutes personal property satisfying all of the six required unities for tenancy by the entireties, subject to a rebuttable presumption).  For all practical purposes, the inquiry in this case stops here. The Tax Refunds (or the resulting deposits) are exempt as tenants by the entireties property owned by the defendants.

---

[7] Section 6013(d) of Title 26 of the Internal Revenue Code provides that a husband and wife may file a joint return even if one of the spouses has no gross income or deductions.

The plaintiffs, however, argue that the Court should take one step back and analyze whether the defendants initially held equal interests in the refund checks, contending that the defendants' individual interests are apportionable based upon provisions of the Internal Revenue Code and the Eleventh Circuit decision, Gordon v. U.S., 757 F.2d 1157 (11th Cir. 1985). In Gordon, the Eleventh Circuit Court of Appeals followed the lead of the Internal Revenue Service and other sister courts in resolving a dispute between *divorced* spouses to determine the amount of a particular tax refund each spouse was to receive. In Gordon, one spouse asserted an entitlement to 50%; the other spouse wanted credit for a higher percentage consistent with the withholding taxes paid. Certainly, if spouses disagree as to their individual interests in a federal tax return, courts can allocate each taxpayer's interest in accordance with the tax withholding payments made.[8] Of course, divorced spouses no longer share the unity of marriage and can no longer own property as tenants by the entireties. Thus, the Eleventh Circuit held that "[w]here spouses claim a refund under a joint return, the refund is divided between the spouses, with each receiving a percentage of the refund equivalent to his or her proportion of the withheld tax payments." Gordon, 757 F.2d at 1160 (citing Rosen v. United States, 397 F.Supp. 342 (E.D.Pa.1975); United States v. Mooney, 400 F.Supp. 98 (N.D.Tex.1975). Of course, when married taxpayers who file joint returns later divorce, they no longer can own a refund as tenants by the entireties, and a rule is needed to divide a tax refund between the divorced spouses. However, nothing in the IRS rules, or in Gordon, in any way limits the ability of married spouses

---

[8] Title 26 of the United States Code, Section 6402(a) provides guidance in this regard, as follows:

**§6402(a). Authority to make credits or refunds**

**(a) General rule.**--In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d) and (e), refund any balance to such person.

to elect to own federal tax refunds or any other type of personal property as tenants by the entireties, which the defendants here have consistently done for 35 years.

Moreover, the plaintiffs' argument is largely a red herring. The defendants received the Tax Refunds years before the debtor filed this bankruptcy case, and deposited each check in the Accounts owned by them as tenants by the entireties long ago. At that point, even if arguably not before, the monies were owned by the defendants as tenants by the entireties. In <u>Beal Bank</u>, the Florida Supreme Court held that joint bank accounts owned by spouses are presumed to be held as tenants by the entireties. 780 So.2d at 58. This would be true regardless of whether only one spouse deposited funds into an account. For example, assume one spouse works and regularly deposits wages into a joint bank account. Under <u>Beal Bank</u>, the funds are deemed owned by the spouses as tenants by the entireties, irrespective of the fact that only one spouse may have generated the income. The same would be true if one spouse received a gift, won the lottery, or, here, possibly has a superior interest in a portion of a federal tax refund. Once the funds are deposited into the joint financial account, the monies can be claimed as property owned jointly by the spouses as tenants by the entireties. One may quibble about the moral implications of this public policy, but, in Florida, the floodgates have opened—funds in financial accounts jointly owned by spouses are exempt from claims of creditors as protected tenants by the entireties accounts.

Here, the Tax Refunds were placed in the protected tenancy by the entireties Accounts years ago. They are exempt from claims of creditors pursuant to Section 522(b)(3)(B) of the Bankruptcy Code. The Court will grant the defendants' motion (Doc. No. 35) on this issue.

<u>Section 522(o) Does Not Trump Tenancy by the Entireties</u>. Turning next to the two issues relating to the debtor's Florida Home, the defendants argue that Section 522(o) of the Bankruptcy Code is not applicable because they own their home as tenants by the entireties. The Court agrees that the defendants *do* own their home as tenants by the entireties. In 2001, they

bought the Florida Home jointly with each of the six required unities established. The defendants were married, the Florida Home was conveyed to them, jointly, at the same time, in the same instrument, and each is entitled to total and exclusive ownership of the property should the other spouse die. Since the time of conveyance, the couple has resided together in the Florida Home and possessed joint ownership and control over the property. Thus, the debtor's claim of tenancy by the entireties is appropriate in that all six of the required unities are present.

The plaintiffs, however, have argued that recently enacted Bankruptcy Code Section 522(o) renders the debtor's tenancy by the entireties exemption invalid, arguing that Section 522(o) reduces the value of the debtor's interest in his homestead "to the extent that such value is attributable to any portion of any property that the debtor disposed of in the 10-year period ending on the [Petition Date] with the intent to hinder, delay, or defraud a creditor and that the debtor could not exempt, or that portion that the debtor could not exempt, under subsection (b), if on such date the debtor had held the property so disposed of." 11 U.S.C. § 522(o). In other words, the plaintiffs argue that, to the extent the debtor acquired the Florida Home using non-exempt funds he acquired by liquidating his business interests with the intent to thwart his creditors, the Court should strip that portion of the value from the Florida Home and distribute the resulting monies to the debtor's creditors.

The defendants' response is simple—Section 522(o) does not apply to the debtor's claimed exemption because, by its own provisions, the statute does not address exemption claims asserted under Section 522(b)(3)(B), which includes all tenants by the entireties exemption claims. Section 522, titled "Exemptions," is a long, dense statute and often difficult to parse. Section 522(b)(1) gives individual debtors at least two choices. They can elect to exempt property under two relevant subsections of 522(b)(3)— subsection (A), which allows exemptions generally under state law, or subsection (B), which addresses exemptions based on tenancy by the entireties ownership. Sections 522(b)(3)(A) and (B) provide:

>   **(3)** Property listed in this paragraph is--
>
>   **(A)** subject to subsections (o) and (p), any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located at a single State for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place;
>
>   **(B)** any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law;
>
>   11 U.S.C.A. § 522.

Section 522(o), however, only applies to subsection (A) of Section 522(b)(3), and not to subsection (B). Specifically, Section 522(o) begins with the limiting language: "For purposes of subsection (b)(3)(A)." Thus, by its explicit terms, Section 522(o) applies only to Bankruptcy Code Section 522(b)(3)(A), and not, as the plaintiffs assert, to Section 522(b)(3)(B). In re Schwarz, 362 B.R. 532, 534 n.2 (Bankr.S.D.Fla.2007) (observing, in dicta, that, "despite its complex tinkering with homestead exemption provisions in BAPCPA, including changes to § 522(b)(3)(A) and new §§ 522(*o*), 522(p), and 522(q), Congress determined to leave wholly intact the preexisting blanket exemption available to debtors who own property in a tenancy by the entireties form if applicable nonbankruptcy law would exempt that property from process. The range of property so exempt under Florida law is extremely broad and encompasses far more than homestead property alone.");[9] Cf. In re Buonopane, 359 B.R. 346 (Bankr. M.D. Fla. 2007) (concluding that a debtor's rights to exempt property under Florida law as tenants by the entirety via Section 522(b)(3)(B) was not subject to the limitations in section 522(p), because the applicability of Section 522(p)(1) was predicated on a debtor having elected an exemption under

---

[9] Judge Olson recently repeated this exact same observation in In re Robodee, 367 B.R. 901, 907, n.6 (Bankr. S.D.Fla. 2007).

Section 522(a)(3)(A), concluding, therefore, by its plain language, Section 522(p) does not apply to property exempted pursuant to Section 522(b)(3)(B)). As the applicability of Section 522(o), like 522(p), is also predicated on a debtor electing an exemption under Section 522(b)(3)(A), for the same reasons Judge Williamson articulated in <u>Buonopane</u>, as well as the opinion expressed by Judge Olson recently in <u>Robodee</u>, and earlier, in <u>Schwarz</u>, the Court declines to expand the scope of Section 522(o) to reach exemptions claimed under Section 522(b)(3)(B).

The plaintiffs next attempt to distinguish the limitations of Section 522(o) by arguing that, because the debtor is using the Florida Home as "a residence,"[10] Section 522(o) somehow carves out an "exception" to the tenancy by the entireties "exception" contained in Section 522(b)(3)(B). They also argue that, because Section 522(b)(3)(A) includes "any property," the subsection is sufficient to subsume all tenants by the entireties property, ignoring the specific reference to tenancy by the entireties property in Section 522(b)(3)(B).

The plaintiffs' position is untenable. For whatever reason, Congress made the limitations of Section 522(o) applicable only to Section 522(b)(3)(A). Congress elected not to impose the same limitations on tenants by the entireties property addressed in Section 522(b)(3)(B). The exemptions provided in Section 522(b)(3)(A) are separate and distinct from those provided in Section 522(b)(3)(B). Similarly, the limits imposed by Section 522(o) apply only to Section 522(b)(3)(A) and not to Section 522(b)(3)(B). The Court will grant the defendants' motion finding that Section 522(o) does not limit a debtor's ability to claim as exempt property owned as tenants by the entireties, such as the Florida Home.

---

[10] Sections 522(o)(1) and (4) reference the terms "residence" and "homestead," however, again, Section 522(o) does not apply to exemptions claimed under Section 522(b)(3)(B).

Statute of Limitations.  Lastly, the defendants assert that the plaintiffs cannot avoid the defendants' purchase of the Florida Home as a fraudulent transfer because the applicable four-year statute of limitations has expired.  Section 726.110 of the Florida Statutes provides that a "cause of action with respect to a fraudulent transfer" asserted under Chapter 726 is extinguished unless the action is brought within four years after the transfer or, if later, within one year after the transfer was or could reasonably have been discovered.  Here, the defendants bought the Florida Home six years ago and contend that this four-year statute of limitations has run.

In response, the plaintiffs argue, and the Court agrees, sufficient factual issues preclude making this finding as a matter of law at this early stage of this litigation.  The debtor filed this bankruptcy case on March 9, only a few months ago.  The bar date for creditors to file claims expires on October 1, 2007, the same date this order will issue.  As such, the entire body of creditors is not yet identified.  As the plaintiffs note, some of these creditors may yet have the ability to assert fraudulent transfers relating to the Florida Home.  We simply do not know at this point.

Moreover, the plaintiffs filed this adversary proceeding in April 2007.  Discovery is in the very early stages.  The plaintiffs listed numerous depositions they need to take and are having substantial difficulty obtaining computer generated records of the debtor's prior businesses, which directly relate to the alleged fraudulent nature of the debtor's transfer of non-exempt assets into the Florida Home and its possible concealment.  Summary judgment is not appropriate if the non-moving party has not had sufficient opportunity to discover essential information to effectively oppose the motion. Burnside-Ott Aviation Training Center, Inc. v. U.S., 985 F.2d 1574 (Fed. Cir. 1993) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, n.5 (1986)). Finding that the plaintiffs have not had sufficient time to complete discovery, the Court will deny, as premature and without prejudice, the defendants' motion in connection with the statute of limitations issue.

In an attempt to guide the parties, however, the Court will address one further issue raised in the defendants' motion that really is a tangent to the defendants' statute of limitations argument but is relevant to the future progress of this litigation. Specifically, the defendants argue that Chapter 726 of the Florida Statutes, and its embedded four-year statute of limitations, establishes the *exclusive* means for a creditor to pursue a fraudulent transfer claim in Florida. After the enactment of the Florida Uniform Transfer Act, according to the defendants, all fraudulent transfer actions are governed only by UFTA.

The plaintiffs, on the other hand, point to Section 56.29 of the Florida Statutes as further authority to pursue fraudulent transfer claims in their attempt to collect the KAL judgment against the debtor. Section 56.29 of the Florida Statutes describes the procedure by which a person holding an unsatisfied execution can initiate proceedings supplementary to execution. "Proceedings supplementary are post-judgment proceedings that permit a creditor to effectuate a judgment lien already existing; they are not independent causes of action." Zureikat v. Shaibani, 944 So.2d 1019, 1022-1023 (Fla. App. 5 Dist. 2006) (citing Burshan v. Nat'l Union Fire Ins. Co., 805 So.2d 835, 843 (Fla. 4th DCA 2001); HENRY P. TRAWICK, JR., FLORIDA PRACTICE AND PROCEDURE § 27-9 (2006) (describing proceedings supplementary to execution)).

Creditors may pursue collection on a judgment for up to 20 years after its entry. Pursuant to Section 55.10(1), if a certified copy of a judgment is recorded in Orange County Public Records, the judgment becomes a lien in Orange County for ten years following the recording date. A party may extend the duration of a judgment lien upon rerecording for up to 20 years from the date of the judgment's entry. Zureikat, 944 So.2d at 1022-1023 (citing §§ 55.10(2), (3); 55.081; Michael v. Valley Trucking Co., Inc., 832 So.2d 213, 217 (Fla. 4th Dist. App. 2002); Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 805 So.2d 835, 839 (Fla. 4th Dist. App. 2001); Betaco, Inc. v. Countrywide Home Loans, Inc., 752 So.2d 696, 697 (Fla. 2nd Dist. App.

2000)). Thus, even the passage of well over a decade may not bar a judgment creditor from initiating proceedings supplementary.

The statute governing proceedings supplementary is codified in Florida Statute Section 56.29, which provides, in relevant part, as follows:

> 56.29. Proceedings supplementary
>
> (1) When any person or entity holds an unsatisfied judgment or judgment lien obtained under chapter 55, the judgment holder or judgment lienholder may file an affidavit so stating, identifying, if applicable, the issuing court, the case number, and the unsatisfied amount of the judgment or judgment lien, including accrued costs and interest, and stating that the execution is valid and outstanding, and thereupon the judgment holder or judgment lienholder is entitled to these proceedings supplementary to execution.
>
> (5) The judge may order any property of the judgment debtor, <u>not exempt from execution</u>, in the hands of any person or due to the judgment debtor to be applied toward the satisfaction of the judgment debt.
>
> (6)(a) When, within 1 year before the service of process on him or her, defendant has had title to, or paid the purchase price of, any <u>personal property</u> to which the defendant's spouse, any relative, or any person on confidential terms with defendant claims title and right of possession at the time of examination, the defendant has the burden of proof to establish that such transfer or gift from him or her was not made to delay, hinder, or defraud creditors.
>
> (b) When any gift, transfer, assignment or other conveyance of <u>personal property</u> has been made or contrived by defendant to delay, hinder or defraud creditors, the court shall order the gift, transfer, assignment or other conveyance to be void and direct the sheriff to take the property to satisfy the execution. <u>This does not authorize seizure of property exempted from levy and sale under execution</u> or property which has passed to a bona fide purchaser for value and without notice. Any person aggrieved by the levy may proceed under ss. 56.16-56.20.
>
> . . .
>
> (9) The court may enter any orders required to carry out the purpose of this section to subject property or property rights of any defendant to execution.

West's F.S.A. § 56.29 (all emphasis added).

A plain reading of Florida Statute Section 56.29 leads to at least three conclusions. First, the statute supplies judgment creditors with the post-judgment ability to seek a court order setting aside transfers of property that were made to delay, hinder, or defraud creditors. Second,

the court's powers to help a judgment creditor obtain transferred property expressly apply only to personal property and not to real property. Third, the statute would not apply to <u>any</u> property exempt from execution. In sum, the statute provides judgment creditors with the ability to seek a court order setting aside a debtor's transfer of non-exempt, personal property where the transfer was made with the intent to delay, hinder, or defraud creditors. What the statute would not appear to do, at least facially, is to provide a way for a judgment creditor to avoid a valid exemption in real or personal property.

Notwithstanding the statute's plain language, at least one court arguably has relied upon Section 56.29 to set aside transfers of misappropriated funds traced into a Florida homestead claimed as exempt by a judgment debtor, in <u>Zureikat v. Shaibani</u>, 944 So.2d 1019 (Fla. 5th Dist. Ct. App. 2006).  In ruling, the Florida Appellate Court noted that, pursuant to Section 56.29(9), courts have the power to "enter any orders required to carry out the purpose of [section 56.29] to subject property or property rights of any defendant to execution." 944 So.2d at 1023. The Court also observed that even "if a statute of limitations applied, clear and convincing evidence showed that Zureikat concealed material facts with respect to his available assets and existing checking accounts such as would equitably estop Zureikat from asserting a limitations bar "because any delay in Shaibani's proceedings supplementary was directly attributable to Zureikat's misconduct." <u>Id.</u> at 1022-1023 (citations omitted).  In imposing the equitable lien upon Zureikat's homestead, the Court concluded that the law was settled, that "trial courts may impose equitable liens in proceedings supplementary where there has been a showing of fraud, misrepresentation, or affirmative deception." 944 So.2d at 1024 (<u>citing</u> <u>Troiano v. Troiano</u>, 549 So.2d 1053, 1057 (Fla. 5th Dist. Ct. App. 1989); <u>Whigham v. Muehl</u>, 511 So.2d 717, 718 (Fla. 1st Dist. Ct. App. 1987).  The Court then proceeded to hold: "More important, the Florida Supreme Court has held that, where funds obtained through one spouse's fraud are used to invest in, purchase, or improve the homestead, an equitable lien may be established despite the

other spouse's innocence or ignorance of wrongdoing." 944 So.2d at 1024 (citing <u>Palm Beach Sav. & Loan Ass'n, F.S.A. v. Fishbein</u>, 619 So.2d 267, 270-71 (Fla.1993); <u>In re Crum</u>, 294 B.R. 402, 405 (Bankr.M.D.Fla.2003)).

Thus, at least one court has ruled that a creditor may pursue an equitable lien against a judgment debtor's homestead six years after the fraud occurred.  The decision was issued well after Florida passed its version of the Uniform Fraudulent Transfer Act; however, this Court is unable to discern the exact basis of the Court's holding.  The decision may rest under traditional fraudulent transfer law, insofar as the judgment debtor apparently "concealed material facts" and may, as a result, have tolled the four-year statute of limitations.  The Court could have relied on the established equitable lien law reaffirmed by the Florida Supreme Court in <u>Havoco of Am., Ltd., V. Hill</u>, 790 So.2d 1018 (Fla. 2001).  Or, the Court could have relied exclusively upon Section 56.29 and its collection powers to render its ruling.

In any event, the <u>Zureikat</u> decision does firmly establish at least one point relevant here. Whatever powers or rights Section 56.29 gives to judgment creditors, such as KAL, those powers run co-extensively with the powers given to creditors under Section 726's fraudulent transfer statute.  The two statutes co-exist under Florida law, albeit not in perfect harmony.  In making this very limited ruling, that Section 726 does not preclude KAL's claims under Section 56.29, this Court intentionally is not defining in this case, in its embryonic stage with no facts or evidence, the outer boundaries of the extent or powers granted by Section 56.29.  Such evidentiary issues can be addressed at a later date, when the record is more complete.

Accordingly, the Court will partially grant and partially deny the defendant's motion for partial summary judgment.  The motion is granted insofar as the Tax Refunds are deemed owned by the defendants as tenants by the entireties.  Section 522(o) of the Bankruptcy Code does not limit the debtor's right to claim his Florida Home exempt as tenants by the entireties property pursuant to Bankruptcy Code Section 522(b)(3)(B).  The motion is denied insofar as material

factual issues preclude finding that the statute of limitations of Section 726.110 of the Florida Statutes bars the plaintiffs from pursuing any fraudulent transfer into the Florida Home. A separate order consistent with this ruling shall be entered.

DONE AND ORDERED on October 1, 2007, in Orlando, Florida.

                                            Karen S. Jennemann
                                            United States Bankruptcy Judge

Copies provided to:

Plaintiff: King Acquisitions, LLC, c/o David C. Cimo, 100 S.E. 2nd Street, Suite 4400, Miami, FL 33131

Plaintiff's Counsel: David C. Cimo, Genovese Joblove & Batista PA, 100 Southeast 2nd Street, Suite 4400, Miami, FL 33131

Defendants: James Allen Hinton and Susan C. Hinton, 9209 Southern Breeze Drive, Orlando, FL 32836

Defendants' Counsel: Frank M. Wolff, Wolff Hill McFarlin & Herron PA, 1851 West Colonial Drive, Orlando, FL 32804

Intervenor-Plaintiff: Drew M. Dillworth, c/o Broad & Cassel, Roy S. Kobert, P.A., P.O. Box 4961, Orlando, FL 32801-4961